Catron, Ch. J.
delivered the opinion of the court.
The court is of opinion, that the statute of descents of 1784, does vest in the heir every estate in fee simple that passes from any person who dies seized, whether such estate be of inheritance or not at the common law, as was holden by Judge Catron, in Campbell vs. Taul, (3 Yer. 561.) This is admitted on the part of Taul’s devisees, but it is insisted, that an estate vested in husband and wife is a single, indivisible title; that the husband and wife are known in law as only one person, that they are a unit by the common law; and if an estate be granted to A and Ms wife, and to B, the husband and wife take one moiety, *333 and B the other: and when either husband or wife die, the longest liver takes the estate.
That the estate" goes to the longest liver, and the heirs of the longest liver, by the common law, is admitted by the other side; but that this is grounded on a rule of sur-vivorship of a peculiar character, is insisted, and that when the wife died, her estate did pass, not to the husband, but by the statute of descent to the wife’s heirs. If any title passed by the death, it is admitted, the statute of descents cast it on the heir.
To prove the wife had a descendable estate, Greneley’s case, (8 Rep. 243), is mainly relied upon. The question there was, whether the husband could do any act during the coverture, to prejudice the wife’s title. The statute of 32, Hen. VIII. having declared that no fine, feoffment, or other act or acts hereafter to be made, suffered or done, by the husband only, of any manors, lands, tenements or hereditaments, being the inheritance or freehold of his wife, during the coverture between them, shall in any wise be or make any discontinuance, or be prejudicial or hurtful to said wife or her heirs, &c.: and the court held, “that this joint estate was within these word, (the inheritance or freehold of his wife,) for she hath a freehold and inheritance in the land, although she hath not the sole freehold or inheritance.” And again, in the same case it is resolved, “but if the husband, aliens, and afterwards the wife is divorced, causa precontracts, or any other divorce which dissolves the marriage a vinculo matrimonii, then)the wife during . the husband’s life may enter,” &c.
The effect of a deed for land to husband and wife has been settled beyond controversy by the common law for) centuries. They take but one estate, as a corporation.' would take, being by the common law deemed but one person; and if one die, the estate continues in the survivor, the same as if a corporator were to die. Coke on Lit. 187, b: 2 Blac. Com. 182: 2 Kent’s Com. 112. And if an estate be conveyed to husband and wife, and *334 to a third person, the husband and wife only take the Qne rao¡ety.5 an(j t¡:e third person the other moiety. Co. on Lit. 187, a. Nothing passes on the death of either the husband or wife, that may first die,'but by a condition in law, the longest liver takes the entire estate. Coke on Lit. 234, b. Such has been the recognized rule of the common law in the American courts. Thus in Massachusetts, (5 Mass. Rep. 521,) Jacob Hearsy conveyed in fee to Thomas Hearsy aDd Mary his wife; Mary died in 1801, the husband living. In 1804, his will devised the lands to Sylvanus and Cyrus Hearsy in fee. Shaw and others were the heirs of Mary, the wife, and as such, claimed a moiety of the premises as tenants in common with the devisees of the husband, relying on the statute of Massachusetts, changing joint tenancies into tenancies in common; in effect,- cutting off survivor-ship in certain cases.
The court declared that joint tenants, held by moieties, not entireties, as did husband and wife, that no severance could be had by either husband or wife, and that the alienation of the husband would not defeat the wife’s title to the whole, if she survived him; that the conveyance to husband and wife is, in legal construction, a conveyance but to one person; and that Thos. Hearsy, on the death of his wife, took the whole estate, wherefore the title of his devisees was sustained. The cause was like the one before the court in all its features.
So in New York, (16 John. Rep. 115), Mary Stevens, widow, married Justus Blanchard, holding lands in fee under the will of her former husband. Blanchard and wife conveyed the lands to Philo Ruggles, who re-conveyed to Blanchard and wife jointly. Blanchard survived his wife, and the question was, whether he became entitled to the whole estate which they both had in the farm, or only to a moiety of it. The court said, “it appears to be well settled, that if an estate he given to a man and his wife, they take neither as joint tenants, or *335 tenants in common; for, being considered as one person . , , , ° , . f m law, they cannot take by moieties, but both are seized of the entirety; the consequence of which is, that neither of them can dispose of any part without the assent of the other, but the whole goes to the survivor.” 2 Black. Com. 133: Coke on Litt. 187: 2 Vern. 120, are recognized as furnishing the settled rule of property.
The legal effect of this description of conveyance is declared by Chancellor Kent in Rogers vs. Benson, (5 John. Ch. Rep. 427,) with his usual accuracy. He says, “The husband and wife in this case were not properly joint tenants, or tenants in common, for they were but one person in law, and could not take by moieties. They were both seized of the entirety, and neither could sell without the consent of the other, and the survivor would take the whole. The same words of conveyance, which would make two other persons joint tenants, will make the husband and wife tenants of the entirety. This is a nice distinction laid down in the old books, and which has continued to be the law to this day, and the provision in our statute that no estate in joint tenancy shall be held under any grant or conveyance, unless the premises were expressly declared to pass, not in tenancy in common, but in joint tenancy, does not reach this case, for the estate of the husband and wife is not a joint tenancy.”
The same has been holden in Virginia, in Thornton vs. Thornton, (3 Randolph’s Rep. 179.) John A. Thornton made his will, giving to his brother-in-law, Francis Thornton, and Jane, his wife, certain lands in fee, and died. Jane Thornton died in the lifetime of her husband, and her children and heirs sued the husband for the moiety of the land, insisting it descended to them on the death of their mother.
The court held that an estate given to the husband and wife is not a joint tenancy, and therefore not affected by the act of assembly concerning joint rights and obliga- *336 lions. In such an estate each party takes the entirety, and the survivor takes the whole, not by survivorship, but by virtue of the original conveyance.
In May, 1833, the same question came before the Supreme Court of Kentucky, in the cause of Rogers vs. Grider, (published in the Commonwealth newspaper of 29th June, 1833.) Robert Moore conveyed a tract of land, adjoining Bowling Green, to his son-in-law and daughter, Martin Grider and wife, which was afterwards sold under executions against Grider, in his lifetime, and Rogers became the purchaser. After Grider’s death, Mrs. Grider filed her bill against Rogers, claiming, first, the whole of the land, and if she was not entitled to the whole, then to one moiety to be allotted to her in severalty, and dower out of the other moiety. It was insisted for the purchaser, that Grider and wife took as joint tenants, and that by the statute of Kentucky destroying joint tenancies, Mrs. Grider could only take a moiety. The court, after stating what the ancient common law was, declare, “that one of the incidents of a joint tenancy was the right of each of the joint tenants to alienate his interest, thereby to sever the joint tenancy and render his co-tenant in common with the alienee; whereas, it is agreed by all the authorities, that neither husband or wife can, by common law, make any alienation of an estate conveyed to them during coverture, so as to affect Jhe entire right of the other on his or her surviving. The unity of person subsisting between man and wife, in legal contemplation, prevents their receiving separate interests. The estate of joint tenants, is an unit made up of divisible parts, subsisting in different natural persons. The estate of husband and wife is an unit, not made up of any divisible,parts, subsisting in different natural persons, but is an indivisible whole, vested in two persons, who are actually distinct, yet who, according to legal intendment, are one and the same. On the death of hushand or wife, the survivor takes no new estate or *337 interest, nothing that was not in him or her before. It is , -i • iii. a mere change Jn the properties oi the legal person holding, not of the estate holden.”
The result of the British and American decisions is the same, without an exception,” that husband and wife take one indivisible estate, which continues, after the death of either natural person, the same estate in thé survivor; consequently, the deed on which this controversy arises has the same legal effect as if it had been made by Deckard, to Taul and wife, to hold to them jointly and inseparably, during their joint liv’es, and on the death of either, that thé estate should go to the longest liver, and his or her heirs forever.
No estate passed on the death of Mrs. Taul to her heirs-, for thé statute of descents to operate upon; nor has the statute any bearing on the true and only question in this cause, the character of the title Mrs. Taul died seized of; and, in supposing it had, Judge Catron was clearly mistaken in the opinion he expressed in Campbell vs. Taul, at Sparta. He took itforgranted thatMrs. Taul held a fee simple estate; whereas; it had annexed to it, a condition in law, that it should continue over to the longest liver. Unexplained, and without careful examination, Greneley’s case is calculated to lead to error. It is therein resolved, that after the divorce, the wife may enter, as a joint tenant, with the husband, (8 Reports, Í45) but this, when examined, proceeds upon reasons too plain to be controverted. Lord Coke refers to a divorce, a vinculo matrimonii, which declares the marriage null and void, and, in England, is so declared by the spiritual court. The causes of divorce are such, in England, as existed previous to, and prohibited the marriage, and made it unlawful and void from the beginning. The issue of such marriage are bastards; the divorced woman is taken as never having been married; and for the personal property in the husband’s hands, that he obtained from her, she may bring detinue; and any *338 conveyance of lands made jointly during the coverture to , the supposed husband and wile, vested m laet m joint tenancy, as in other cases. 1 Bl. Com. 440: Jac. L. D. Divorce. The spiritual court having declared a marriage void, the common law courts generally take no notice of the fact that a marriage had ever existed; yet this general rule had the exception made to it as, declared in Grene'-jey’s case, that the statute of 32 Henry VIII. protected the' wife' de facto against the acts of the husband, done before the divorce was pronounced, as where he had sold and parted with the possession of the wife’s lands.
Our statute (1799, ch. 19) confers the jurisdiction to grant divorces on the common law courts, and the divorce may be grounded on causes arising subsequent to the marriage; but the 10th section of the act makes it the duty of the court to decree to the divorced wife such portion of the real and personal property of the husband as is consistent with the nature of the case, and order it to be partitioned to her. No considerations can be drawn from the doctrine of divorces, in anywise coming in conflict with the established principles giving effect to joint deeds, to husbands and wives, as single and indivis-ibles titles.
The next question is, has a conveyance of land, proved and registered, any different effect by force of the act of 1715, ch. 38, than a feoffment, or bargain and sale grounded on a valuable consideration had, before the act was passed? It declares no conveyance for lands shall be good and available in law, unless proved and registered; and that all deeds, so done and executed, shall be valid and pass estates in lands, without «livery of seisin, attornment, or other ceremony in the law whatsoever.
The ceremonies referred to, and which, by the common law, were necessary to vest a title in the grantee, are stated by the court in Thomas vs. Blackmore, (5 Yerg. Rep. 124) and will not be repeated. The act of *339 1715 dispensed with the necessity of an actual delivery of possession to the purchaser, and.with the assent of the tenant, if any, to the change of landlords; nor is it necessary the deed should be grounded on a valuable consideration, to give effect to it by force of the statute of uses; for all these, the registration is a substitute, (2 Tenn. Rep. 264,) and the title vests without their observance; but when vested, the effect of- the deed, and the character of the title tafeen, is the same as a deed of bargain and sale, or feoffment, would have conferred before the passage of the act of 1715. The court is therefore of opinion, that judgment on the case agreed must be entered for the defendants.
G-REEN, J. gave no opinion.
Judgment accordingly.