**In re Thomas Moore TEMPLETON, Bankrupt.**

**Robert S. PETERS, Trustee, Plaintiff,**

v.

**WHITE COUNTY FARM SUPPLY, INC., Defendant.**

**Bankruptcy No. BK-4-79-00037.**

United States Bankruptcy Court, E. D. Tennessee.

Oct. 24, 1979.

Robert S. Peters, Swafford, Davis, Peters & O'Neal, Winchester, Tenn., for plaintiff.

H. Marshall Judd, Cookeville, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The trustee in bankruptcy filed a complaint against the defendant on June 11, 1979. The complaint alleged that the defendant received a payment that was a voidable preference under § 60 of the Bankruptcy Act (11 U.S.C. § 96). The gist of the complaint is that the defendant had a judg-

ment lien on the bankrupt's interest in real estate owned by him and his wife as tenants by the entirety, the property was sold, and the defendant was paid in full—an amount greater than the value of its lien. A payment on a valid lien may be a voidable preference to the extent it exceeds the value of the lien. 3 Collier ¶ 60.22 at 871.

The court finds the facts as follows.

On June 23, 1978, the defendant obtained a judgment against the bankrupt for $8,401.11. The judgment was against the bankrupt only, not against him and his wife.

The bankrupt and his wife owned a farm as tenants by the entirety.

On November 3, 1978, the defendant had its judgment recorded in the register's office as a lien on the farm owned by the bankrupt and his wife.

Early in December, 1978, the bankrupt and his wife sold the farm. The proceeds were first applied to satisfying two mortgages on the farm. The defendant was paid $8,866.61 in full satisfaction of its judgment against the bankrupt.

The bankrupt did not remember if the check from the sale of the farm was to him only or to him and his wife. He signed the check to pay the defendant. He also testified that his wife made no separate agreement with the defendant.

The bankrupt testified that he told a representative of the defendant that he was insolvent and that he could make it if everybody (his creditors) would allow him to stop paying them for a year. David Paulk, part owner and manager of the defendant, testified that in the summer of 1978 the bankrupt said he couldn't pay but the cows were better and he could make it if everyone would lay off a while. Sixty days later he was told the same thing.

The bankrupt filed his petition in bankruptcy on March 20, 1979. His wife has not filed a petition in bankruptcy.

### Preferential Transfers in General

A transfer is preferential under § 60a of the Bankruptcy Act if it is:

(1) a transfer of property of the debtor (2) within four months before bankruptcy (3) to or for the benefit of a creditor (4) for or on account of an antecedent debt (5) made or suffered by the debtor while insolvent (6) the effect of which will be to enable the creditor to obtain a greater percentage of its debt than other creditors of the same class.

A transfer that is a preference under § 60a is voidable if, at the time of the transfer the creditor who was benefited by it had reasonable cause to believe the debtor was insolvent. Bankruptcy Act § 60b.

### Discussion

In this case several of the requirements are easily met. The payment to the defendant from the proceeds of the sale of the farm was a transfer by the bankrupt (debtor) to the defendant (creditor) within four months before the bankrupt filed his petition in bankruptcy. The payment was on account of an antecedent judgment debt. The bankrupt's testimony shows that he was insolvent at the time. The defendant argued that it did not have reasonable cause to believe the bankrupt was insolvent at the time of the payment. "Reasonable cause to believe insolvent" does not require actual knowledge of insolvency.

The creditor charged with having received a voidable preference has "reasonable cause to believe" that the debtor is insolvent at the time of payment or transfer if, at that time, he knew or should have known from facts brought to his attention, or readily apparent, that the debtor's financial situation was so precarious that a man of ordinary prudence would deem him to be insolvent or make further inquiry before dealing with him as a solvent person. As stated, actual knowledge of the insolvency is not required to be shown. The creditor is charged with the knowledge which a reasonably diligent inquiry would disclose. 4 Remington on Bankruptcy § 1708 at 329–330.

If the creditor has knowledge of facts sufficient to put him, as a reasonable man, upon inquiry as to the debtor's solvency or insolvency, he is chargeable with knowledge of all such facts bearing on the point as a reasonably diligent inquiry would have disclosed.

4 Remington on Bankruptcy ¶ 1708.1 at 332.

The court finds that the defendant was put on inquiry and that a reasonably diligent inquiry would have revealed the bankrupt's insolvency. The bankrupt testified that he told the defendant's representative that he was insolvent. Both the bankrupt and the defendant's manager testified that the bankrupt said he could continue in business only if he could refrain from paying his creditors for a while; the bankrupt said for one year. The debt to the defendant had been owing for several months. The defendant obtained a judgment in June and was paid in December. On these facts the court finds that the defendant had reasonable cause to believe the bankrupt was insolvent at the time of the payment.

The court must postpone a determination of whether the defendant obtained a greater percentage of its debt than other creditors of the same class so that it may first decide whether or not the transfer caused a diminution of the debtor's estate.

### Diminution of the Debtor's Estate

■ Though the requirement is not found in § 60, it is well-established that for a transfer to be a voidable preference it must cause a diminution of the debtor's estate. 3 Collier on Bankruptcy ¶ 60.20. If the creditor has an unavoidable lien on the debtor's property, a payment on the lien debt does not cause a diminution of the debtor's estate except to the extent that the payment is more than the value of the property subject to the lien. Payment, up to the value of the property, releases it from the lien claim so that there is no net decrease in the debtor's estate. 3 Collier on Bankruptcy ¶ 60.22.

The question in this case is what was the "property" on which the defendant had a lien and what was its value.

■ It is well-established in Tennessee that a husband cannot convey or encumber his wife's interest in property that they hold as tenants by the entirety. Furthermore, a creditor of the husband who levies on property held by the husband and wife as tenants by the entirety cannot sell the wife's interest but only the husband's right of survivorship. See *Covington v. Murray*, 220 Tenn. 265, 416 S.W.2d 761 (1967); *Alfred v. Bankers' & Shippers' Ins. Co.*, 167 Tenn. 278, 68 S.W.2d 941 (1934); *Newson v. Shackleford*, 163 Tenn. 358, 43 S.W.2d 384 (1931); *Cole Mfg. Co. v. Collier*, 95 Tenn. 115, 31 S.W. 1000 (1895).

■ Under Tennessee law the defendant's lien based on a judgment debt of the husband attached only to his right of survivorship. The right of survivorship of a tenant by the entirety is necessarily of little marketable value. The creditor can recover from the property only if the debtor survives the other tenant by the entirety. The creditor cannot dispossess the other tenant by the entirety. In this case there were two substantial mortgages on the property. The bankrupt-husband's right of survivorship in the equity would have been of little value to prospective purchasers. The court finds that the bankrupt's right of survivorship had no market value. The defendant was paid $8,866.61 when the farm was sold. The amount is more than the bankrupt's valueless right of survivorship, and therefore the payment resulted in a diminution of his estate.

### Greater Percentage

■ The court also finds that as a result of the payment the defendant received a greater percentage of its debt than other creditors of the same class. The defendant was secured only to the value of the bankrupt's right of survivorship. In this case the creditor was in effect unsecured. Payment in full of its unsecured debt resulted in its receiving a larger percentage of its debt than other unsecured creditors.

*Trustee's Recovery—Property of
the Debtor*

For a transfer to be a preference under § 60, the property transferred must have been "property of the debtor." If the transfer is a voidable preference the trustee should recover the property transferred or its value. In this case the most difficult questions are what part of the payment to the defendant was the bankrupt's property and what can the trustee recover.

■ It is established in Tennessee that when tenants by the entirety sell their property they hold the proceeds as tenants by the entirety unless a contrary intent is shown. *Burt v. Edmonds*, 224 Tenn. 403, 456 S.W.2d 342 (1970); *White v. Watson*, 571 S.W.2d 493 (Tenn.App.1978). Though the nature of a tenancy by the entirety is difficult to explain, it is such that the court can say that legally the payment to the defendant was from the bankrupt's money:

> An estate by the entireties is one held by the husband and wife by virtue of a title acquired by them jointly after their marriage. Being regarded as one person in law, they take, not in parts or shares, like joint tenants or tenants in common, but each takes the whole . . . . [Citations omitted.] [O]n the death of the husband or wife, the survivor takes no new title or estate; he or she is in possession of the whole from its inception.

*Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695 at 698 (1956).

The trustee is entitled to recover the entire payment to the defendant. The transfer is voided. But, does the trustee take the money subject to the rights of the bankrupt's wife?

As the court said above, the proceeds of a sale of a tenancy by the entirety are likewise held in a tenancy by the entirety unless the parties manifest a contrary intent. If no such intent was shown in this case then the trustee will hold the funds subject to the rights of the bankrupt's wife as a tenant by the entirety.

■ The court is of the opinion that in this case the trustee should recover the money free of the rights of the bankrupt's wife. When the payment was made to the defendant the bankrupt and his wife thereby ended their tenancy by the entirety in it. It might go too far to say that the bankrupt's wife consciously intended to give up her rights in the fund as a tenant by the entirety. But the payment did show an intent to apply the money to the payment of her husband's (the bankrupt's) debt to the defendant. The trustee by recovering  the money free of the rights of the bankrupt's wife may then apply it to the payment of the bankrupt's debts in general.

This course of action more nearly carries out the aims of the bankrupt and his wife and at the same time is more efficient than having the trustee hold the money pending the death of the bankrupt or his wife.

An order will be entered accordingly.

This memorandum constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.