**In re Earl Ross GARRETSON, Bankrupt.**

**C. Kenneth STILL, Trustee, Plaintiff,**

**v.**

**Earl Ross GARRETSON, Mrs. Earl Ross Garretson, and Citizens State Bank of McMinnville, Tennessee, Defendants.**

**Bankruptcy No. Bk–4–79–00123.**

United States Bankruptcy Court, E. D. Tennessee.

Sept. 10, 1980.

---

128

Robert S. Peters, Winchester, Tenn., for plaintiff.

T. Arthur Jenkins, Manchester, Tenn., for defendant, Earl Ross Garretson.

Joe S. Bean, Winchester, Tenn., for defendant, Mrs. Earl Ross Garretson.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This cause of action involves a certificate of deposit issued to "Mr. or Mrs. E. R. Garretson" in the principal amount of $16,-000.00 and drawing interest at an annual rate of 9.55%. The certificate was issued on January 10, 1979. About nine months later Mr. Garretson, but not Mrs. Garretson, filed a petition in bankruptcy. The trustee of his bankruptcy estate has laid claim to the certificate. He brought this cause of action against Mr. and Mrs. Garretson and the bank to recover all or part of the deposit represented by the certificate.

The Garretsons answered that the certificate was bought with Mrs. Garretson's money, and that in any event, it is owned by them as tenants by the entirety.

The court finds the facts as follows.

## FACTS

Mrs. Garretson purchased the certificate of deposit with the proceeds of a savings account and a prior certificate of deposit, both of which were in her name only. She testified that she inherited the money in the savings account and the prior certificate from her mother and father and her brother. A report of the distribution of her mother's estate showed that she received $4,473 from it. Mrs. Garretson said that she received other money from her mother's bank accounts. She also inherited a share in her brother's land which produced, as well as she could remember, about $3,000.00 to $4,000.00. She had no other source of income independent from Mr. Garretson. Since 1975 they have received social security benefits, and he has farmed a little.

Mr. Garretson testified that he didn't contribute any of the money with which the certificate of deposit was purchased.

The certificate itself provides:

This is to Certify That *Mr. or Mrs. E. R. Garretson* has deposited in this bank the sum of *$16,000 and 00 cts.* Dollars which amount the Bank agrees to pay to the Registered Owner hereof upon presentation of this certificate according to the terms and conditions herein ....

The remaining provisions, except the last line, relate to the interest rate, the maturity date, and automatic renewal. The last line says:

This certificate is assignable only on the books of the issuing bank.

The certificate was made out to Mr. or Mrs. Garretson at the recommendation of Herbert Miller, an officer of the bank. He advised Mrs. Garretson that by making the certificate to both of them the money would be available to one if anything happened to the other. Mr. Garretson understood that was the reason for putting his name on the certificate. He recognized the money as Mrs. Garretson's money. Mr. Miller also testified that they called the money her money.

The certificate was kept in a safety deposit box at the bank. Mrs. Garretson testified that only she had a key to the box, but that her daughter was also listed on the signature card. On checking with the bank, Mr. Miller reported that Mrs. Garretson, her daughter, and Mr. Garretson were listed on the signature card. Mr. Garretson testified that Mrs. Garretson received the certificate of deposit and that he never had possession of it.

Mr. Miller testified that without the certificate, neither Mr. nor Mrs. Garretson could withdraw the money except by posting a bond.

## DISCUSSION

In the court's view the main question in this case is whether on the date of his bankruptcy Mr. and Mrs. Garretson owned the certificate of deposit as tenants by the entirety and if so, what were his rights in it. Other subsidiary questions will be dealt with in the course of the opinion.

■■ Tenancy by the entirety is a form of ownership by a husband and wife. Though there are two people they own property as tenants by the entirety as if they were one person. *Taul v. Campbell*, 7 Yerg. 319, 15 Tenn. 319 (1835). In Tennessee a husband and wife can own personal property as tenants by the entirety. *Sloan v. Jones*, 192 Tenn. 400, 241 S.W.2d 506 (1951); *Campbell v. Campbell*, 167 Tenn. 77, 66 S.W.2d 990 (1934).

■ A husband or wife can create a tenancy by the entirety in property owned by him or her. *First American National Bank v. Evans*, 220 Tenn. 393, 417 S.W.2d 778 (1967); *Smith v. Haire*, 133 Tenn. 343, 181 S.W. 161 (1915).[1] That one spouse originally owned the property does not mean that both cannot subsequently own it as tenants by the entirety. Therefore, the source of the funds used by buy the certificate of

deposit is largely irrelevant if the Garretsons intended to own the certificate as tenants by the entirety. *Oliphant v. McAmis*, 197 Tenn. 367, 273 S.W.2d 151 (1954).

■ There are two chief attributes of a tenancy by the entirety. *Robinson v. Trousdale County*, 516 S.W.2d 626 (Tenn. 1974). One is the right of survivorship. If one tenant dies, the other owns the property outright. The survivor does not inherit the deceased spouse's interest but becomes the sole owner on the termination of the other's interest. *Newsom v. Shackleford*, 163 Tenn. 358, 43 S.W.2d 384 (1931).

The other chief attribute of a tenancy by the entirety is inalienability. Generally, the actions of one tenant cannot affect the other's rights in the property. *Robinson v. Trousdale County*, above.

■ The Garretson's intent in having the certificate issued to him *or* her was consistent with the intent to create a tenancy by the entirety. *Oliphant v. McAmis*, above; *Sloan v. Jones*, above. The money used to buy the certificate came from a savings account and prior certificate of deposit, both in Mrs. Garretson's name only. She had control of those funds. There was no need to have the certificate issued to them both so that she would have the money if anything happened to him. The purpose of having the certificate made to him or her was first to create a right of survivorship in him. Probably they also intended to make the money available to him if she became disabled. In that case, the money might be needed but not readily available to him if the certificate was issued in her name only. The Garretsons' primary intent was to make the money available to one if something happened to the other.

How they intended to handle the account in the meantime is not as clear. As to control, the source of the money may reflect on the parties' intent.[2] Mrs. Garretson

---

1. This case was decided before *Campbell v. Campbell*, above, established that a tenancy by the entirety can exist in personal property, but it is cited in *Campbell* with approval.

2. This is the reason for the trustee's argument that part of the money came from Mr. Garretson. As to whether a tenancy by the entirety was intended, that he also contributed would

controlled the money used to buy the certificate. Mr. Garretson treated that money as hers. The certificate was put in a safety deposit box to which Mrs. Garretson, but not Mr. Garretson, had a key. Mr. Garretson understood that the certificate was made to him only so that he would have the money if something happened to Mrs. Garretson. Certainly they did not intend that Mr. Garretson have free rein with the deposit. It appears that they intended for Mrs. Garretson to retain control but she also was not to have free rein. Rather, the court concludes that they intended generally to leave the deposit alone so that on the death or disability of one, the other would have it, but in the meantime, Mrs. Garretson would retain control for the purpose of protecting and managing the money.

■ Furthermore, having the certificate made to Mr. *or* Mrs. Garretson was legally effective to create a tenancy by the entirety. The Tennessee courts have held that a deposit in the names of, or an instrument or account payable to, "husband and wife" or "husband or wife" creates a tenancy by the entirety. *First American National Bank v. Evans*, above; *Sloan v. Jones*, above; *State ex rel. Progressive Building and Loan Association*, 174 Tenn. 597, 129 S.W.2d 513 (1939); *White v. Watson*, 571 S.W.2d 493 (Tenn.App.1978).[3]

■ In Tennessee it is also established that a tenant by the entirety has an interest that his or her creditors can levy on and sell for satisfaction of their debts. But that interest is only a right of survivorship. *In re Templeton*, 1 B.R. 245 (Bkrtcy.E.D.Tenn. 1979). The trustee in bankruptcy acquires it under § 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5) (1976). It provides that *as of the date of filing* of the bankruptcy petition, the trustee is vested with the bankrupt's title to:

> property . . . which prior to the filing of the petition he could by any means have transferred or which might have been

levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . .

The trustee in this case claims more than Mr. Garretson's right of survivorship. He argues that because of the "or" in the certificate Mr. Garretson had the right to payment or transfer of the full amount of the certificate, and so he (the trustee) is entitled to all or at least part of the deposit.

■ The "or" is the source of the problem. Generally in a tenancy by the entirety neither tenant can, by his or her actions alone, affect the other tenant's rights in the property. *Robinson v. Trousdale County*, above. But the tenants may agree that either can act for the other in using the property. *Sloan v. Jones*, above; *State ex rel. McCormack v. American Building & Loan Ass'n*, 177 Tenn. 385, 150 S.W.2d 1048, 1063 (1941) (Steuterman); *State ex rel. Progressive Building & Loan Ass'n*, above. When "or" is used it implies that each tenant may use the property to the prejudice of the other's rights. Based on that implication some courts have held that "or" creates rights repugnant to a tenancy by the entirety and so one cannot exist. See Annots., 64 A.L.R.2d 8, § 9 & § 31 (1959); 117 A.L.R. 915, 918 (1938).

The Tennessee courts have rejected that notion. In *Sloan v. Jones*, above, the Tennessee Supreme Court held that a checking account in the names of "Joe Tatum or wife" was owned by them as tenants by the entirety. The court adopted the reasoning that the checking account was held by them as tenants by the entirety, but each had the authority as agent of the other, to withdraw the full amount of the account.

The problem with such accounts when one tenant goes bankrupt is summed up in 4A Collier on Bankruptcy ¶ 70.18 at 221 (14th ed. 1967).

> Where the incidents of inalienability by either spouse and immunity to judicial

---

only add to the evidence for that conclusion. *Oliphant v. McAmis*, above.

**3.** The parties have treated the Garretsons as the registered owners without proof. The court concludes that they were since otherwise their intentions could not have been fulfilled.

process at the instance of creditors of [one spouse] attach to [the property], the trustee in bankruptcy ... can [not] claim any right to the property under § 70(a). The problem is complicated, however, when ... one tenant has the power to transfer absolutely the property held by the entirety, [but] the other tenant may insist that the property received in exchange is held subject to the same type of tenancy or ... may avoid the transfer as against a transferee with notice of such other tenant's rights. That the law would impose a tenancy by the entirety on the proceeds or property received in exchange ... does not necessarily militate against a conclusion that the transferring spouse had property which he could buy some means transfer. If, however, the attempted transfer would be ineffectual or voidable unless made to a bona fide purchaser, the question would appear to be the same as that arising with respect to property held by the bankrupt as trustee and as such transferable to a bona fide purchaser in disregard of the rights of the [beneficiary of the trust]. The trustee in bankruptcy does not become the beneficial owner of property held by the bankrupt in trust. The trustee should likewise have no claim to property held by the bankrupt under such a tenancy that he could not transfer it without committing a breach of trust vis–á–vis another tenant . . . . .

■ The court believes that this case fits into the trust analogy. Suppose that before bankruptcy Mr. Garretson obtained payment of the certificate and used it to pay his creditors or transferred the certificate to his creditors. If Mrs. Garretson had not consented, his using the deposit to pay his creditors would have been contrary to their agreement. As to her, his actions would have been wrongful.

■ That, of course, does not mean that she could recover from the bank or from the creditors who were paid. As to creditors who lacked notice of her rights, she might be estopped to deny Mr. Garretson's right to use the certificate made to her or him. 41 Am.Jur.2d, Husband & Wife §§ 233 & 234 (1968). That Mr. Garretson might have wrongfully used the deposit to pay his creditors does not determine the extent of the trustee's title under § 70(a)(5). Rather, the trustee takes title as the bankrupt has it–subject to whatever conditions it is subject to. 4A Collier on Bankruptcy ¶ 70.04 at 55 (14th ed. 1967).

The fact that the "or" is in a written instrument does not change that result. To argue that it does misses the point of the cases like *Sloan v. Jones*, above. Though the authority of either tenant to use the property is consistent with a tenancy by the entirety, it does not mean that either tenant can use the property *completely free of the other tenant's interest.* Such a right would be repugnant to a tenancy by the entirety. The extent of each tenant's authority inferred from the use of "or" is not thereby delimited. Its true extent can be shown by other evidence. Cf. *Frazier v. Frazier*, 221 Tenn. 705, 430 S.W.2d 655 (1968); *Sloan v. Jones*, above; *Smith v. Haire*, above; see also note 3 below.

The evidence in this case shows that Mr. Garretson did not have the authority to use the property as he desired free of Mrs. Garretson's rights. In other situations, such as joint checking accounts,[4] the court might conclude that either tenant has actual authority to use all of the account for the payment of his or her debts. See *Sloan v. Jones*, above. But that is not the situation in this case.

Moreover, it appears that, as a practical matter, Mr. Garretson could not have used the certificate for his own purposes. The Garretsons intended that she have control

4. The court notes that the certificate is not a negotiable instrument. Tenn.Code Ann. §§ 47–3 110 & 47–3–111 (Repl.Vol.1979). It is not clear whether it falls within Tenn.Code Ann. § 47–3–805 (Repl.Vol.1979). Section 47–3–116 on the effect of naming payees in the alternative is at best relevant by way of analogy, since it may not be applicable and the Garretsons are not named as payees in the certificate. The court also concludes hereafter that Mr. Garretson lacked control of the certificate.

of the certificate. The only doubt about her control is caused by the lack of proof as to Mr. Garretson's right to access to the safety deposit box despite his not having a key. But, on the date of bankruptcy Mrs. Garretson was capable of conducting her financial affairs.

The court also cannot overlook the bank's knowledge of Mrs. Garretson's rights. Mr. Miller recommended that the certificate be issued as it was for the protection of Mr. or Mrs. Garretson if something happened to one of them. He understood that purpose and probably also understood that Mrs. Garretson would make the investment decisions as to the certificate while she was able.

The court concludes that on the date of bankruptcy Mr. Garretson could not have obtained the certificate without Mrs. Garretson's consent. Furthermore, if he had tried to obtain payment of or to assign the certificate without possession, the bank probably would have notified Mrs. Garretson and would have required a bond for her and its protection. A transferee of his rights should be put on notice by his lack of possession. Indeed, it is not certain that the bank would have dealt with Mr. Garretson alone even if he had possession of the certificate. Its knowledge of Mrs. Garretson's rights put it in danger of being liable to her if it allowed Mr. Garretson to act without her cooperation.

Section 70(a)(3) of the Bankruptcy Act, 11 U.S.C. § 110(a)(3) (1976), also gives the trustee the benefit of any power that the bankrupt could have exercised for his own benefit but not solely for the benefit of others. The court's conclusions above show that the bankrupt lacked the power to use the certificate for his own benefit to the detriment of Mrs. Garretson's interest. Section 70(a)(3) therefore does not help the trustee.

Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c) (1976), also gives the trustee the rights of a judgment lien creditor of the bankrupt. In some situations a judgment lien gives the trustee greater rights in the debtor's property than other *creditors* with prior interests in the proper-

ty. See Tenn.Code Ann. § 47–9–301(1)(b) & (3) (Repl.Vol.1979). But a judgment lien nevertheless attaches only to the debtor's interest in property, in this case the bankrupt's interest. *Cole Manufacturing Co. v. Collier*, 95 Tenn. 115, 31 S.W. 1000 (1895); *Ames v. Norman*, 4 Sneed 683, 36 Tenn. 683 (1857); see also *Weaks v. Gress*, 225 Tenn. 593, 474 S.W.2d 424 (1971); *Baker v. Hardin*, 10 Heisk. 300, 57 Tenn. 300 (1872); *Thomas v. Walker*, 6 Humph. 93, 25 Tenn. 93 (1845). Section 70(c) does not give the trustee greater rights against a co–owner than the debtor has.

The trustee is therefore entitled only to Mr. Garretson's right of survivorship in the certificate of deposit. The trustee may sell that right or may elect other relief. See *United States v. Ragsdale*, 206 F.Supp. 613 (W.D.Tenn.1962). The certificate is now being held by the trustee subject to the court's decision in this case. To protect the trustee's rights the court will order that the trustee continue in possession, but that he take appropriate action within a limited time.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.